(47 Misc. Rep. 209.)

MANHATTAN & BRONX ELECTRIC CO. v. FORNES et al.

(Supreme Court, Special Term, New York County.   May, 1905.)

1, MUNICIPAL CORPORATIONS—GRANT OF FRANCHISES—GREATER NEW YORK CHARTER.

Under Greater New York Charter, Laws 1901, p. 38, c. 466, § 74, requiring an ordinance for the grant of a franchise to use a street to be referred by the board of aldermen, on its introduction and first reading, to the board of estimate and apportionment, which shall make inquiry as to the money value of the franchise and the adequacy of the compensation proposed to be paid, and providing that no grant shall be made by the board of aldermen, except on terms approved by the board of estimate and apportionment, it is the imperative duty of the board of aldermen, on the introduction and first reading of an ordinance granting a franchise to lay and construct electric wires on or under the streets of the city, to refer such ordinance to the board of estimate and apportionment for its consideration.

**2. SAME.**

The fact that the board of aldermen may ultimately refuse to grant the franchise does not authorize it to refuse to refer the ordinance to the board of estimate and apportionment in the first instance.

**3. SAME.**

Under Greater New York Charter, Laws 1901, p. 38, c. 466, § 74, providing that, before any grant of a franchise to use a street shall be made, the proposed grant, embodied in the form of an ordinance, shall be published at least 20 days in the City Record, and at least twice in two daily newspapers, and the ordinance shall, on its introduction and first reading, be referred by the board of aldermen to the board of estimate and apportionment, the publication should be made after, and not before, the reference of the ordinance to the board of estimate and apportionment.

**4. SAME.**

Whether an ordinance granting a franchise to use city streets has been brought to a first reading, so as to require a reference to the board of estimate and apportionment, in accordance with Greater New York Charter, Laws 1901, p. 38, c. 466, § 74, is to be determined by whether there was a first reading or not, in accordance with the usual and orderly procedure of the board of aldermen and with their understanding of the fact, agreeably to the rules of procedure adopted by them.

**5. MANDAMUS—ISSUES OF FACT—ALTERNATIVE WRITS.**

On an application for a peremptory writ of mandamus to compel the board of aldermen to refer an ordinance granting a franchise to use city streets to the board of estimate and apportionment on its first reading, as required by Greater New York Charter, Laws 1901, p. 38, c. 466, § 74, where there is an issue of fact as to the procedure of the board of aldermen which is necessary to properly bring such an ordinance to a first reading, it cannot be held as matter of law that there was a first reading of the ordinance, and only an alternative writ may issue.

Application by the Manhattan & Bronx Electric Company for peremptory writ of mandamus against Charles V. Fornes, president, and others, comprising the board of aldermen of the city of New York. Alternative writ issued.

Rufus O. Catlin (Walter L. Worrall, of counsel), for petitioner.
L. Laflin Kellogg (Alfred C. Pette, of counsel), for respondents.

BISCHOFF, J. The petitioner, a corporation organized under the transportation corporations law of this state for the purpose of manufacturing and using electricity for producing heat, light, power, etc., seeks a peremptory writ of mandamus directing the respondents, composing the board of aldermen, to comply with section 74 of the Greater New York charter (Laws 1897, p. 26, c. 378, as amended by Laws 1901, p. 38, c. 466), and to refer to the board of estimate and apportionment an ordinance purporting to grant consent, permission, and authority to the petitioner to lay, erect, and construct suitable wires or other conductors on, over, or under the streets of the city of New York, in the borough of Manhattan, for conducting and distributing electricity. In effect the claim is that the board of aldermen have refused to take the steps commanded by the statute preparatory to the grant of a franchise to this corporation, and the question depends, to a certain degree, upon a construction of the sections of the charter relative to the manner in which franchises shall be granted. The subject, so far· as material, is covered by the provisions of sections 72, 73,

and 74 of the charter, forming a part of title 1 of chapter 3; it being provided by section 72:

"Every grant of or relating to a franchise of any character to any person or corporation must, unless otherwise provided in this act, be by ordinance."

Section 73 imposes a limitation upon the duration of franchises so granted, and section 74, the section under which this application is made, provides as follows:

"Before any grant of the franchise or right to use any street, avenue, waterway, parkway or highway shall be made, the proposed specific grant, embodied in the form of an ordinance, with all of the terms and conditions, including the provisions as to rates, fares and charges, shall be published at least twenty days in the City Record and at least twice in two daily newspapers published in the city to be designated by the mayor at the expense of the proposed grantee. Such ordinance shall on its introduction and first reading be referred by the board of aldermen to the board of estimate and apportionment, who shall make inquiry as to the money value of the franchise or right proposed to be granted and the adequacy of the compensation proposed to be paid therefor, and no grant thereof by the board of aldermen shall be made except on terms approved by vote or resolution of the board of estimate and apportionment, entered on the minutes or records of such board, and every ordinance containing or making such grant shall require the concurrence of three-fourths of all the members of the board of aldermen."

It is alleged in the petition that at a regular meeting of the board of aldermen, held on the 20th day of December, 1904, an ordinance was introduced and read, which, by its terms, gave or purported to give the consent of the board to lay, erect, and construct suitable wires, etc., in, on, over, and under the streets, etc., in the borough of Manhattan for conducting and distributing electricity; that immediately after the introduction and reading of said ordinance a resolution was moved to have the same referred to the board of estimate and apportionment, but that the board did not adopt said resolution, and, instead, referred the ordinance to the committee on water supply, gas, and electricity of said board of aldermen. Thereafter certain communications were addressed to the board, and certain proceedings were had, disclosing the petitioner's assertion of its right to have the proposed ordinance immediately referred to the board of estimate and apportionment; and it appears that the demand was refused by the board.

Upon the question of the petitioner's right to insist that the board of aldermen should refer a proposed ordinance expressing the grant of a franchise to the board of estimate and apportionment upon the introduction and first reading of the ordinance, it is contended for the respondents that, since the board would have the power, after examination into the advisability of the ordinance by the board of estimate, to refuse to make the grant, they (the board of aldermen) had the power to refuse to take the preliminary steps in the matter of referring the ordinance to the board of estimate and apportionment, should their conclusion be that, under all circumstances and at all events, the proposed franchise should be refused; and it is claimed that the attitude of the board was that no such franchise as the petitioner sought should ultimately be made, in view of the expected adoption of some policy whereby the municipality would take into its own hands the ownership and control of electric lighting facilities. This contention does not appear to me to be sound. It is made the absolute duty of the

board of aldermen to refer the proposed ordinance granting a franchise of this character to the board of estimate, in order that the latter board may make inquiry as to the money value of the franchise and as to the adequacy of the compensation to be paid therefor, and suggest such terms for the granting of the franchise which shall be conclusive as a condition to the grant. Until the board of estimate have examined into the matter, the board of aldermen are in no position to say that the proposed ordinance, when complied with by the petitioner in the matter of the terms advised by the board of estimate and apportionment, would not be greatly to the advantage of the city; and, until the views of the board of estimate and apportionment are expressed, the matter is in no condition for an expression of opinion by the board of aldermen adversely to the granting of the franchise in any event. It is to be presumed that in exercising their discretion the board of aldermen are to be actuated °wholly by their views as to the best interests of the city, and conceivably a proposed ordinance embodying suggestions which might be made by the board of estimate as to terms would be so greatly for the interests of the city that general considerations of policy, which might include the desirability of a franchise of the general character involved, would necessarily give way before the particular benefits to be derived by the city in the specific case.

It is also urged by the respondents that section 74 of the charter contemplates the publication of the proposed ordinance as a preliminary to its introduction and first reading, but this does not appear to be the reasonable meaning of the section. True, the position of the clauses relating to the publication and to the first reading is such that the matter of publication is first alluded to, but the publication is expressed to be a condition which precedes the making of the grant or franchise; i. e., the final adoption of the ordinance. Many things are to intervene the introduction of the ordinance and its adoption; the adoption being the act by which the grant of the franchise is made. When using the words, "Such ordinance shall, on its introduction and first reading, be referred by the board of aldermen to the board of estimate and apportionment," the Legislature could not have intended an ordinance whereby the grant of the franchise was made, since the making of the grant is to succeed the examination into the matter by the board of estimate, and, in view of the fact that the terms upon which the franchise is to be granted are to be fixed by the board of estimate, it would appear that the publication which is to give notice of the proposed franchise, in connection with the terms proposed, must reasonably have been intended to come after, not before, the board of estimate was called upon to give its advice. My opinion is, therefore, that but for certain disputed questions of fact, to which I shall allude, the petitioner would be in a position to insist that the proposed ordinance be referred to the board of estimate and apportionment, and a peremptory writ could properly issue upon the facts stated in the petition.

It is alleged, however, in opposition that no ordinance actually came to the condition of an introduction and first reading, it being expressly averred that the only proceedings before the board, relating to the franchise, invoked the introduction or submission by the petitioner of

an application for the franchise, and that this application was referred to a subcommittee, to wit, the committee on water supply, gas, and electricity, in accordance with the rules and regulations of the board of aldermen with regard to matters submitted for their action and consent. It appears from these affidavits that, by the standing rules of the board of aldermen as to proposed ordinances, it is provided that every proposed ordinance or resolution shall, on its introduction, be referred by the president to a standing or special committee; that the committees shall report in writing on all matters referred to them, with a brief statement of facts and their opinion relating thereto, and they shall report, also, a resolution or ordinance proposing the necessary action by the board. It is also alleged that by these standing rules the parliamentary practice comprised in Jefferson's Manual shall govern the board in all cases to which they are applicable, and in which they are not inconsistent with the standing rules and ordinances of the board. Further, it is alleged that the rules of parliamentary practice thus referred to provided for the reference of such a matter as this to a subcommittee for the purpose of drafting the proposed matter upon which the body is to act by resolution or otherwise.

What the rules of the board are, as well as what may be the actual condition of the rules of parliamentary practice applicable under the rules of the board, is obviously a matter of fact, and, since the procedure which is to lead to the orderly bringing of a resolution or ordinance to a first reading is a necessary factor, for the purposes of a determination whether the ordinance has come to a first reading, within the meaning of section 74 of the charter, an issue is presented upon which the petitioner's right to a writ of mandamus very materially depends. Section 74 of the charter does not prescribe the manner in which a resolution shall be brought to a first reading, and, of necessity, the situation depends upon whether there was a first reading or not, in accordance with the usual and orderly procedure of the board of aldermen, and, with their understanding of the fact, agreeably to the rules of procedure which they had adopted. As the case stands, it cannot be held, as matter of law, that there was a first reading, and that the right of the petitioner to insist that the ordinance be referred to the board of estimate and apportionment under the statute had arisen for the purposes of enforcement.

An alternative writ may issue; but, for the reasons stated, the motion for a peremptory writ is denied. Ordered accordingly.